**Szewczyk v. Szewczyk**

*William R. Carroll*, for plaintiff.
*No appearance for defendant.*[1]

COFFROTH, *P.J.*, March 18, 1985—This case is here on plaintiff-father's petition for court hearing on custody of his children now in the physical custody of the mother in Chester County, Pa.

Issue: Must this court afford full faith and credit to a custody decree ordered by the court of a Pennsylvania county if such court had a pending custody proceeding and exercised proper jurisdiction substantially in conformity with the Uniform Child Custody Jurisdiction Act?

Answer: Yes.

## FACTS

On June 12, 1984 Mrs. Szewczyk left her marital home in Somerset County, taking her three minor sons with her. They moved into her parents' home in Chester County where Mrs. Szewczyk filed for divorce on November 5, 1984. Mr. Szewczyk filed for divorce on November 7, 1984 in Somerset County. Petitions for custody were filed by the contes-

---

1. Joseph B. Policicchio of Ogle, Metz, and Policicchio of this bar attended the hearing on behalf of defendant-respondent as auditor only; he declined to enter a formal appearance and took no part in the hearing.

tants in their respective counties on November 9, 1984 by the mother and on January 4, 1985 by the father.

The Chester County Court of Common Pleas held a hearing on the preliminary objections filed by the father as to whether Chester County was an appropriate forum to determine custody. The court found that it could exercise proper jurisdiction in the matter and granted custody to the boys' mother.

Mr. Szewczyk appeared before this court to refute Chester County's findings.

## OPINION

Child custody is governed by the Uniform Child Custody Jurisdiction Act (UCCJA), 42 Pa.C.S. §5341 et seq. Although the language throughout this act refers to interstate jurisdictional controversies, §5364(a) also places intrastate matters within the act.

Under the UCCJA concurrent jurisdiction may exist under §5342. If concurrent jurisdiction exists, "[t]he general rule is that we cannot exercise jurisdiction if at the time of filing a proceeding concerning the custody of the child is pending in a court of another state exercising jurisdiction substantially in conformity with the UCCJA. 42 Pa.C.S. §5347(a)," Walker v. Walker, 44 Somerset L.J. 47 (1983).

In the present case petitioner-father admits that the mother filed her petition for custody order (November 9, 1984) before he filed a similar petition (January 4, 1985). Therefore, our issue centers on whether the Chester County Court did in fact exercise jurisdiction "substantially in conformity with the UCCJA," Walker, supra.

UCCJA §5344(a) lists five bases upon which a court can determine competency to adjudicate child custody cases. These are alternative bases so that

more than one court could have jurisdiction. Grun v. Grun, no. 202 Div. 1982, slip opinion by Coffroth, P.J. (Somerset County, May 4, 1983). We find that the Courts of Chester and Somerset Counties have concurrent jurisdiction in the case.[2]

---

2. UCCJA §5344(a) provides as follows:

"§5344. Jurisdiction

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth

(i) is the home state of the child at the time of commencement of the proceeding: or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) It is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationship of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

The last three bases of §5344(a), (3) to (5), do not apply in this case. There are no allegations of child abuse or abandonment to qualify under §(3). The welfare agency investigation in §(5) is eliminated in intrastate controversies by §5345(d). Obviously §(4) does not apply because Chester County did not decline to exercise jurisdiction.

Therefore, we must examine the first two alternatives for jurisdiction, §5341(a)(1) and (2). Judge Shaulis adopted Hattoum v. Hattoum, 295 Pa. Super. 169, 441 A.2d 403 (1982), as a succinct summary of Pennsylvania law in Schartiger v. Schartiger, 41 Somerset L.J. 39 at 41-42 (1982).

"The Act treats as preferable the 'home' jurisdiction under §5344(a)(1). This jurisdiction either is the 'home' state of the child at the beginning of the proceedings or was the 'home' state within six months prior to the commencement of proceedings. In the matter of D.L.S. and J.L.S., Appeal of KAS, 278 Pa. Super. 446, 420 A.2d 625 (1980)."

The Szewczyk children had resided in Chester County for approximately five months when their mother filed her complaint for divorce and custody there on November 5, 1984. Thus, Chester is not the "home" jurisdiction of the Szewczyk boys; the children had lived in Somerset County all of their lives prior to June, 1984. As they had not lived outside Somerset for the six months prior to the initial filing for custody, Somerset remains the "home" jurisdiction.

"There are circumstances, however, in which a court may determine that 'home' jurisdiction does

---

(5) the child welfare agencies of the counties where the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child."

not prevail. The second base of jurisdiction provides as follows:

(2)(i) the child and his parents, or the child and at least one contestant, have significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child . . ." Hattoum, supra, at 175, through Schartiger, supra at 42.

Under §5344(a)(2) both Somerset and Chester have colorable reasons for exercising jurisdiction. Somerset is where the boys had lived their lives until June, 1984. Their father, friends, and paternal relatives still reside in Somerset County. The *significant connection* and *substantial evidence* required by the UCCJA exists in Somerset County. On the other hand, Chester County is their maternal familial home. They had visited the county throughout their lives. Friends and relatives reside there. Therefore, unlike In the Matter of D.L.S. & J.L.S., Appeal of K.A.S., supra, where the minor children had had no contact with Florida until moving there three and one-half weeks prior to the commencement of the custody proceedings, the Szewczyk sons had enjoyed "significant connection" in Chester County.

Thus, Chester County had jurisdiction to decide where the appropriate forum was to determine custody. It acted substantially in conformity with the UCCJA and "[i]n short, by reason of the priority in time of the [Chester County] proceeding, the [Chester] Court has the exclusive or prior right under Pennsylvania law to determine appropriateness of

forum, and it is this court's duty now to stay its hand
. . ." Grun, supra at 14.

There is no reason to think that this court can do any better job of deciding this case than can the Chester County Court, or is any more competent to do so, or that the best interests of the children will be slighted, or that the father will not be treated fairly there. He was given full opportunity to be heard with counsel and there are no allegations that the hearing was faulty. The Chester Court's custody decree is binding on all parties, as stated in §5353 of the act. The father's remedy is a direct appeal from that decree; a parent dissatisfied with a custody decree must take that route and cannot expect to have instead a second opportunity to litigate the issues in another court. Moreover, from the juridical standpoint, exercise of jurisdiction by this court in the instant custody petition of the father would generate intolerable conflict between equally competent courts, which the UCCJA was enacted to avoid.[3]

---

3. UCCJA §5353 provides as follows:

"§5353. Binding force and res judicata effect of custody decree

A custody decree rendered by a court of this Commonwealth which had jurisdiction under section 5344 (relating to jurisdiction) binds all parties who have been served in this Commonwealth or notified in accordance with section 5346 (relating to notice to persons outside this Commonwealth; submission to jurisdiction) or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this subchapter."

October 5, 1980, P.L. 693, §201(a), effective in 60 days.

## ORDER

Now, March 18th, 1985, plaintiff's petition for court hearing on custody is denied at petitioner's cost.